WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Don Greene,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>United States of America,<br><br>　　　　　　　Defendant. | No. CV 14-8021-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendant United States of America's ("the United States") Motion for Reconsideration (Doc. 22) of the Court's November 24, 2014 Order (Doc. 19) denying the United States' Motion to Dismiss (Doc. 13). Also pending before the Court is the United States' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 30). Although the Court did not request that Plaintiff respond to the United States' Motion for Reconsideration, Plaintiff filed a response. (Doc. 20). Plaintiff also filed a response to the United States' Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 31). The United States then filed a Reply in Support of United States' Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 32). The Court now rules on the motions.

**I.　BACKGROUND**

In its previous Order, the Court summarized the background of this dispute as follows:

Mr. Greene and his former wife ("the Greenes") filed a joint 1990 tax return on or about March of 1991. (Doc. 1 at 2). The joint return was a 1040 tax return which reflected an adjusted gross income ("AGI") of $74,714.42, a taxable income of $44,968.00, and withholding credits of $9,803.76. (*Id.*) The Greenes reported a tax liability of $8,450.00 in the 1040 return, and received a refund of $934.00. (Doc. 13-1 at 3). Mr. Greene also filed a corporate return for the 1990 taxes of his 100% personally-owned corporation, MDG Inc. (Doc. 1 at 2).

In 1992, the Internal Revenue Service ("IRS") opened an examination of the Greenes' 1990 tax returns. (Doc. 1 at 2). The IRS completed its examination of the 1990 tax returns in 1997. (*Id.*) After the examination, IRS account records reflected the Greenes' 1990 AGI as -$493,879.58 with a taxable income of $0.00. (*Id.*) The 1990 IRS examination work-papers also alleged unreported income of $888,496.75 to MDG Inc. (*Id.* at 3). The IRS issued a Statutory Notice of Deficiency reflecting a deficiency of $269,830.00, a fraud penalty of $191,939.00, and an accuracy penalty of $2,782.00. (Doc. 13-1 at 4).

The IRS determined that Mrs. Greene was not liable for the entire tax liability resulting from the 1990 Notice of Deficiency. (Doc. 13-1 at 4). Thus, the IRS assessed taxes on two separate accounts: one Joint Master File account, and one separate Non-Master File account ("NMF 1") for Mr. Greene individually. (*Id.* at 4–5). An amount of approximately $202,000.00 was assessed to the Joint Master File account of Mr. and Mrs. Greene. (*Id.* at 5). The remaining portion of the deficiency, approximately $350,000.00, was assessed to the separate NMF 1 account under Mr. Greene's name only. (*Id.*) After the IRS applied the assessment to the Joint Master File account, the IRS granted Mrs. Greene innocent spouse relief from the joint and several liability. (*Id.*) The full liability of the Joint Master File was then transferred to a second separate Non-Master File account ("NMF 2") against Mr. Greene only. (*Id.*) Thus, the liability shown on the Joint Master File account was reduced to $0.00. (*Id.*) After Mrs. Greene received innocent spouse relief, "Mr. Greene's liability was tracked in the two separate assessment files, NMF 1 and NMF 2." (*Id.*)

In 2012, the United States and Mr. Greene settled a refund suit for Mr. Greene's 1995 tax year. (Doc. 13-1 at 6). "The liability tracked in NMF 2 was paid in full" when $170,124.00 of the settlement amount was offset against Mr. Greene's 1990 tax liability. (Doc. 17 at 5). Meanwhile, NMF 1 has an outstanding balance of $761,101.46 with more interest accruing daily. (Doc. 13-1 at 6).

Mr. Greene filed the instant suit seeking a refund for the $170,124.00 offset against NMF 2. (Doc. 1 at 5).

*Greene v. United States*, 2014 WL 6666996, at *1–2 (D. Ariz. Nov. 24, 2014).

## II.     MOTION FOR RECONSIDERATION

### A.     Legal Standard

Generally, motions for reconsideration are disfavored and are appropriate only if: (1) the movant presents newly discovered evidence; (2) the Court committed clear error or the initial decision was manifestly unjust; or (3) an intervening change in controlling law has occurred. *See Sch. Dist. No. 1J, Multnomah Cnty., Or. v. AC & S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A party should not file a motion to reconsider to ask a court "to rethink what the court had already thought through—rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). "No motion for reconsideration shall repeat in any manner any oral or written argument made in support of or in opposition to the original motion." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003). Therefore, "[t]he Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1).

### B.     Analysis

In its motion for reconsideration, the United States does not contend that there is newly discovered previously unavailable evidence or that there has been an intervening change in controlling law. Rather, the United States argues that "the interpretation of the word 'assessment' was misapprehended by the Court with respect to application of the full payment rule." (Doc. 22 at 2). More specifically, the United States contends that the Court committed manifest error because "[t]he fact that the total tax liabilities for 1990 owed by the Plaintiff . . . are tracked in two separate accounts is not sufficient to allow him to pursue a refund [for one account] in district court." (*Id.* at 5).

The United States argues that because Plaintiff paid only one Non-Master File

- 3 -

(NMF) account in full, the Court does not have subject matter jurisdiction over this case. (*Id.*) In a previous motion, the United States expressly argued this point by representing to the Court that because the two NMF accounts together constitute Plaintiff's total tax liability for 1990, both accounts must be paid in full for the Court to have jurisdiction:

- "[Plaintiff's] total liability for tax year 1990 is thus computed by combining the balance of both NMF 1 and NMF 2." (Doc. 13 at 56; Doc. 17 at 4).
- "Here, the court lacks jurisdiction to hear Plaintiff's claims because he has not fully-paid the assessed tax, interest, and penalties for tax year 1990." (Doc. 13 at 8).
- "Because Plaintiff has not fully paid his 1990 tax liability, he is not entitled to file a suit for refund in district court and this Court should dismiss his action for lack of jurisdiction." (Doc. 17 at 2).
- "In his Opposition to the United States' Motion to Dismiss, Plaintiff alleges that because one of the assessments for his 1990 federal tax liability was satisfied, the Court has jurisdiction to hear his refund claim for that assessment. This piecemeal approach to refund litigation is incorrect. The standard universally applied by the Courts requires that a taxpayer must fully pay the total outstanding federal tax liability for a federal tax year prior to bringing a refund suit in federal district court." (Doc. 13 at 2–3) (internal citations omitted).

As one of the main issues in the United States' Motion to Dismiss, the Court was aware of these arguments at the time of its Order. Nonetheless, the Court found the "NMF 1 and NMF 2 accounts to be sufficiently separate assessments for jurisdictional purposes." (Doc. 19 at 8).

The timeline of events is critical to understanding the Court's rationale. The initial deficiency assessment against Plaintiff and his former wife Mrs. Greene was a "joint assessment," tracked in a Joint Master File account under the names of both Plaintiff and Mrs. Greene. (Doc. 13-2 at 2). The IRS then determined that Mrs. Greene was not liable for the couple's entire tax liability. (*Id.* at 2–3). Thereafter, on March 27, 1998, the IRS

assessed an additional tax deficiency to a separate Non-Master File (NMF 1) in Plaintiff's name only. (*Id.* at 3). Therefore, two *independent* assessments were outstanding at this time: 1) the Joint Master File, holding Plaintiff and Mrs. Greene jointly liable; and 2) NMF 1, holding Plaintiff solely liable. After these two assessments, Mrs. Greene filed for innocent spousal relief from the joint liability under the Joint Master File account. (*Id.*) The IRS granted Mrs. Greene relief and transferred the assessment originally tracked in the Joint Master File to NMF 2, an account in Plaintiff's name only. (*Id.*) Later, in 2012, the liability tracked in NMF2 was paid in full when Plaintiff and the United States settled a 1995 refund suit. (Doc. 13-1 at 6; Doc. 17 at 5). Plaintiff promptly filed the instant suit seeking a refund for the $170,124.00 offset against NMF 2. (Doc. 1).

The United States argues that the two assessments should be added together to determine Plaintiff's total tax liability for 1990. (Doc. 22). Consequently, the United States urges, the Court does not have jurisdiction until Plaintiff pays his *total* tax liability for 1990. (*Id.*) While the Court agrees with the general assertion that the two assessments can be added together to reach Plaintiff's "total" tax liability for 1990, the Court's jurisdiction over this case remains.

Despite the United States' contention that a taxpayer should not be able to "appeal individual assessments" (Doc. 22 at 5–6), case law interpreting 28 U.S.C. 1346[1] leads to a contrary conclusion when multiple assessments are made for the *same* tax year. *See Flora v. United States*, 362 U.S. 145, 177 (1960) (requiring "full payment of *the assessment* before an income tax refund suit can be maintained in a Federal District

---

[1] Through 28 U.S.C. § 1346(a)(1), Congress has broadly consented to suits against the United States in the district courts for the refund of any federal taxes "alleged to have been erroneously or illegally assessed or collected, . . . or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." But, other statutory provisions, as well as the Supreme Court's interpretation of § 1346(a)(1), establish a range of restrictions that qualify a taxpayer's right to bring an independent refund suit in the district court. Specifically, 26 U.S.C. § 7422(a) provides that a taxpayer must have first filed a "claim for refund or credit" with the IRS to maintain a refund suit; and 28 U.S.C. § 1346(a)(1) has been read by the Supreme Court to require full payment of an assessed tax before a taxpayer can invoke the jurisdiction of the district courts for the refund of any portion of such tax, see *Flora v. United States*, 362 U.S. 145, 177 (1960).

1  Court" (emphasis added)); *Hutchinson v. United States*, 677 F.2d 1322, 1325 (9th Cir.
2  1982) ("Full satisfaction of *the income tax assessment upon which refund is sought* is a
3  jurisdictional prerequisite to maintenance of a suit for refund in the district court."
4  (citation omitted) (emphasis added)); *United States v. Powell*, 2001 WL 283808, at *10
5  (D. Ariz. Feb. 20, 2001) ("The jurisdiction of the court to hear a tax refund suit must be
6  established in the complaint, and the affidavits and pleadings must establish that plaintiff
7  has both paid *the tax it wants refunded* and filed a claim for refund." (citation omitted)
8  (emphasis added)); *see also Thomas v. United States*, 755 F.2d 728, 729 (9th Cir. 1985)
9  ("Ordinarily, there is no jurisdiction in the district court over suits for the refund of
10 penalty amounts paid until the taxpayer has paid the full amount of *the contested penalty
11 assessment*." (emphasis added)).

12 The courts in each of these cases use the definite article "the" to describe which assessment a taxpayer must pay before he can appeal. Generally, "the" is used to indicate that the following noun is definite or has been previously specified. Consequently, the Court construes "the assessment" to mean that a taxpayer can appeal *each* assessment made against him, provided the assessment has been paid in full. In this case, the IRS made two *separate* assessments against Plaintiff: NMF 1 and NMF 2.[2] And, as described, Plaintiff paid NMF 2 in full in 2012. (Doc. 13-1 at 6; Doc. 17 at 5). Accordingly, because Plaintiff paid in full "the income tax assessment upon which relief is sought," the Court does not find clear error or manifest injustice in its November 24, 2014 Order.

21 **C.  Conclusion**

22 The United States must show more than a disagreement with the Court's decision. The Court should not grant a motion for reconsideration unless there is a need to correct a clear error of law or prevent manifest injustice. *See Motorola, Inc.*, 215 F.R.D. at 586. Such is not the case here. The United States has failed to present the Court with cause to

---

[2] In its own words, the United States notes that an "NMF account is established for *each* assessment." Internal Revenue Service, Department of the Treasury, Transaction Pocket Guide, Doc. 10978 (Rev. 12-99) (emphasis added). Thus, the United States must concede that two separate assessments were made against Plaintiff.

reconsider its November 24, 2014 Order denying the United States' Motion to Dismiss. For the reasons set forth above, the United States' Motion for Reconsideration is denied.

### III. MOTION TO DISMISS

The United States moves to dismiss Mr. Greene's amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). (Doc. 30 at 2). The United States also argues that Mr. Greene's request for a redetermination of his tax liability should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (*Id.*)

#### A. Rule 12(b)(1)

The United States previously moved to dismiss Mr. Greene's original complaint for lack of subject matter jurisdiction. (Doc. 13). In its Order, the Court discussed the issue at length and ultimately denied the United States' motion. *See Greene*, 2014 WL 6666996, at *4–6. In this Order, the Court denies the United States' Motion for Reconsideration (Doc. 22) of its previous Order. Consequently, to the extent Mr. Greene's amended complaint incorporates the same facts, parties and claims from his original complaint, the Court denies the United States' Rule 12(b)(1) motion to dismiss. *See id.* The Court, therefore, need only determine whether it has subject matter jurisdiction over Mr. Greene's added claim for a "redetermination of [his] entire tax liability for 1990." (Doc. 28 at 2).

##### 1. Legal Standard

Rule 12(b)(1) "allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *abrogated by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). "The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

An allegation of lack of subject matter jurisdiction may be raised at any time by the parties or the court. Fed. R. Civ. P. 12(h)(3). A Rule 12(b)(1) motion to dismiss "for

1 lack of subject matter jurisdiction may either attack the allegations of the complaint or
2 may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction
3 in fact." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979). In
4 resolving a "speaking motion" or "factual attack" under Rule 12(b)(1), the court is not
5 limited to the allegations in the pleadings if the jurisdictional issue is separable from the
6 merits of the case. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Instead,
7 the court may view evidence outside the record, and no presumptive truthfulness is due to
8 the complaint's allegations that bear on the subject matter jurisdiction of the court.
9 *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Indeed, "the district
10 court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue
11 prior to trial, resolving factual disputes where necessary." *Id.* However, if the court
12 resolves a Rule 12(b)(1) motion on declarations alone, without an evidentiary hearing, it
13 must accept the complaint's factual allegations as true. *McLachlan v. Bell*, 261 F.3d 908,
14 909 (9th Cir. 2001).

### 2. Deficiency and Assessment Procedure

16 When the Internal Revenue Service ("IRS") determines that a taxpayer owes more
17 to the federal government than the taxpayer has paid, the IRS is required by section
18 6213(a) of the Internal Revenue Code ("the Code") to send the taxpayer a "notice of
19 deficiency" and wait ninety days to see whether the taxpayer files "a petition with the
20 United States Tax Court for a redetermination of the deficiency." 26 U.S.C. § 6213(a). If
21 the taxpayer disagrees with the stated amount of taxes owed in the notice of deficiency,
22 he "has two options: pay the amount assessed and then sue for a refund in federal district
23 court or the Court of Federal Claims under 28 U.S.C. § 1346(a), or refuse to pay the tax
24 and file a petition in Tax Court under 26 U.S.C. § 6213 for a redetermination of the
25 deficiency." *Byers v. Comm'r of Internal Revenue Serv.*, 740 F.3d 668, 671 (D.C. Cir.
26 2014) (quotation omitted). In this regard, section 6213(a) of the Code provides that "no
27 assessment of a deficiency in respect of any tax . . . shall be made . . . until such notice
28 had been mailed to the taxpayer, nor until the expiration of such 90–day . . . period, . . .

nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final." 26 U.S.C. § 6213(a).

After passage of these three time periods, the IRS is authorized to make an "assessment" recording the taxpayer's outstanding liability. *See* 26 U.S.C. § 6201; *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 243 (2002). An assessment is "essentially a bookkeeping notation" made when the IRS "establishes an account against the taxpayer on the tax rolls." *Laing v. United States*, 423 U.S. 161, 170 n.13 (1976). Upon issuance of an assessment, the federal government automatically acquires a lien on all property belonging to the taxpayer. *See* 26 U.S.C. §§ 6321, 6322. "A federal tax lien, however, is not self-executing, and the IRS must take affirmative action to enforce collection of the unpaid taxes." *EC Term of Years Trust v. United States*, 550 U.S. 429, 430–31 (2007) (quotation omitted).

Until 1998, the IRS, upon making an assessment and to enforce collection of an unpaid tax, could levy on a delinquent taxpayer's property without any additional opportunity for a hearing. *See United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985). In 1998, Congress established the collection due process ("CDP") hearing procedure "to temper any harshness" caused by the IRS's ability to levy on a taxpayer's property before the taxpayer could challenge the collection action. *Byers*, 740 F.3d at 671 (quotation omitted); *see* 26 U.S.C. § 6330. Specifically, a taxpayer may request a CDP hearing before the IRS Office of Appeals, where the taxpayer can raise "any relevant issue relating to the unpaid tax or the proposed levy." 26 U.S.C. § 6330(b)(1), (c)(2). The taxpayer can appeal the Office of Appeals' determination to the Tax Court for judicial review. *Id.* § 6330(d). The Tax Court's decision is subject to review by the Ninth Circuit. *Id.* § 7482(b)(1)(A); *see Byers*, 740 F.3d at 675–77.

### 3. Analysis

Mr. Greene's amended complaint baldly claims "that his action for a refund entitles [him] to a redetermination of the entire tax liability for 1990." (Doc. 28 at 2). Mr. Greene asserts that the Court has jurisdictional authority over his complaint pursuant to:

1 "28 U.S.C. § 1346(a)(1), 26 U.S.C. § 7422(a); *Yuen v. United States*, 825 F.2d 244, 245
2 (9th Cir. 1987)." (Doc. 1 at 1; Doc. 28 at 1). Citing a lack of subject matter jurisdiction,
3 the United States moves to dismiss Mr. Greene's claim. (Doc. 30-1 at 4). To buttress its
4 argument, the United States offers one sentence: "[Mr. Greene's] amended complaint
5 seeks a refund and a 'redetermination of his entire tax liability for 1990' without
6 explanation for the Court's authority to grant the relief he seeks or its basis for
7 jurisdiction." (*Id.*)

8 Because Mr. Greene is *pro se*, the Court will construe his complaint liberally. *See*
9 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally
10 construed and a *pro se* complaint, however inartfully pleaded, must be held to less
11 stringent standards than formal pleadings drafted by lawyers." (quotations omitted)).
12 Even under liberal interpretation, however, Mr. Greene's amended complaint is silent as
13 to whether he seeks a redetermination of the initial deficiency found by the IRS or a
14 judicial review of a CDP hearing. Mr. Greene's response to the United States' motion to
15 dismiss is equally mute. (*See* Doc. 31). In order "to do justice," the Court will address
16 both possibilities. Fed. R. Civ. P. 8(e).

17 **a.  Redetermination of Initial Deficiency**

18 In this case, Mr. Greene, upon receiving a notice of deficiency in 1997, "requested
19 his tax attorney, Michael Blessington, to file a Tax Court Petition on plaintiff's behalf
20 and he failed to do so." (Doc. 1 at 4). Therefore, Mr. Greene seemingly admits he failed
21 to timely file a petition for a redetermination of his tax liability. *See* 26 U.S.C. § 6213(a)
22 ("Within 90 days . . . after the notice of deficiency . . . is mailed . . . the taxpayer may file
23 a petition with the Tax Court for a redetermination of the deficiency."). Even if Mr.
24 Greene's claim was timely filed, however, the United States Tax Court has exclusive
25 jurisdiction over income tax redeterminations. *See id.*; *Danner v. United States*, 208 F.
26 Supp. 2d 1166, 1170 (E.D. Wash. 2002) ("In general, the United States Tax Court has
27 exclusive jurisdiction to determine the correctness of deficiency assessments made by the
28 Commissioner of Internal Revenue . . . ."). This Court, therefore, lacks subject matter

jurisdiction as to matters related to a redetermination of Mr. Greene's tax liability.

The lone case cited by Mr. Greene in his amended complaint, *Lewis v. Reynolds*, 284 U.S. 281 (1932), is inapposite to the present case. In *Lewis*, the Supreme Court of the United States held that when bringing a lawsuit for refund of taxes paid, the taxpayer has the burden of proving he overpaid his taxes for the applicable period. 284 U.S. at 282. Indeed, "the ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax." *Id.* at 283. If the taxpayer fails to meet that burden, the Court noted, the government may redetermine the taxes owed and retain any sums necessary to satisfy the taxpayer's total liability even if any new assessment would otherwise be barred by the statute of limitations. *Id.* Thus, the underlying point of *Lewis* is that the government "may retain payments already received when they do not exceed the amount which might have been properly assessed and demanded" and that this process "involves a redetermination of the entire tax liability." *Id.*; *see Mo. Pac. R.R. Co. v. United States*, 338 F.2d 668, 670 (Ct. Cl. 1964) ("The government has a right to reaudit a return and challenge by way of a defense, in the nature of a setoff, in a refund suit, the validity of the tax treatment accorded any item in taxpayer's return. . . . This of necessity involves a redetermination of [the taxpayer's] entire tax liability under the particular tax return on which he sues for a refund.").

While *Lewis* mentions redeterminations of tax liability, its central holding is that in a refund lawsuit the taxpayer bears the burden of proving he overpaid his taxes, not that the taxpayer has the right to a redetermination. In fact, a taxpayer is only statutorily "entitled" to a redetermination if he refuses to pay the assessed tax and files a petition with the Tax Court for a redetermination of the assessed deficiency within 90 days of receiving the notice of deficiency. *See* 26 U.S.C. § 6213(a). When the taxpayer pays the assessed deficiency and sues for a refund in federal district court, the burden rests on the taxpayer's shoulders to prove he overpaid his assessed tax. *See Lewis*, 284 U.S. at 282; *Watts v. United States*, 703 F.2d 346, 348 (9th Cir. 1983) ("[A] taxpayer in a refund suit[] has the burden to prove overpayment of tax." (citing *Martinez v. United States*, 669 F.2d

- 11 -

568, 569 (9th Cir. 1981))). The cases cited by Mr. Greene in his Response to the United States' Motion to Dismiss Plaintiff's Amended Complaint support this notion. *See Globe Gazette Printing Co. v. United States*, 13 F. Supp. 422, 425 (Ct. Cl. 1936) ("It is fundamental that when a suit is brought for the recovery of taxes, *the taxpayer must show that he has overpaid his tax* and that involves a redetermination of his entire tax liability." (emphasis added)); *Dysart v. United States*, 340 F.2d 624, 628 (Ct. Cl. 1965) ("In a refund action, the taxpayer cannot recover unless he has overpaid his tax.").

Finally, Mr. Greene does not assert that he does not know the "basis of law and facts" supporting the IRS's deficiency determination. *See Cornett-Lewis Coal Co. v. Comm'r of Internal Revenue*, 141 F.2d 1000, 1005 (6th Cir. 1944) ("[T]he taxpayer is entitled to know the basis of law and facts on which the Commissioner asserts deficiencies and until this is done, there is no burden of proof resting on the taxpayer."). Rather, Mr. Greene claims he is entitled to a redetermination of his tax liability as the result of filing this lawsuit. (Doc. 28 at 2). In any event, it is clear that the IRS has informed Mr. Greene of its underlying position.[3] The burden, therefore, is on Mr. Greene to prove he overpaid his assessed tax. *See Lewis*, 284 U.S. at 282. Mr. Greene's mere claim for a redetermination, without more, is not enough. *See W. Md. Ry. Co. v. United States*, 131 F. Supp. 873, 890 (D. Md. 1955) ("It is not necessary that the Commissioner make an official redetermination before the suit for refund is filed, provided the taxpayer is not taken by surprise and the Government has informed him of its position.").

Accordingly, this Court does not have subject matter jurisdiction over a claim for a redetermination of tax deficiency.

### b. Judicial Review of CDP Hearing

The Court next considers whether Mr. Greene is entitled to a judicial review of a CDP hearing. Once the IRS has notified a taxpayer of its intent to file a notice of lien or

---

[3] Mr. Greene may disagree with the IRS's underlying position, *see* (Doc. 31 at 5), however, that does not "entitle" him to a redetermination. Because the IRS has informed Mr. Greene of the "basis of law and facts" that supported its deficiency determination, the burden rests on Mr. Greene to prove he overpaid his tax.

- 12 -

to impose a levy, the taxpayer has the right to a CDP hearing before the IRS Office of Appeals, and is entitled to raise defenses and to contest the levy or lien. 26 U.S.C. § 6330(c)(2). After receiving a determination from the IRS Office of Appeals, a taxpayer may seek judicial review of that determination in the Tax Court. *See id.* § 6330(d) ("The [taxpayer] may, within 30 days of a determination under this section, appeal such determination to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)."). Exclusive jurisdiction, therefore, is vested in the Tax Court, not the district court. *See id.*; *Bartschi v. Tracy*, 2001 WL 1338795, at *3 (D. Ariz. Sept. 5, 2001) ("When the IRS's proposed levy involves an underlying income tax liability, judicial review over a determination made in a CDP hearing lies in the United States Tax Court, not the district court." (citation omitted)).

Accordingly, even if the Court liberally construes Mr. Greene's amended complaint to be seeking judicial review of a CDP hearing regarding his 1990 tax liability, exclusive jurisdiction lies with the Tax Court, not this Court.

### c.   Conclusion

Based upon the above analysis, the Court will grant the United States' motion to dismiss Mr. Greene's redetermination claim for lack of subject matter jurisdiction. Mr. Green, as the party seeking to invoke the court's jurisdiction, did not meet his burden of establishing that jurisdiction exists. *See Aero Alloy*, 912 F.2d at 1092. There is no question that the Tax Court has exclusive jurisdiction over petitions for income tax redeterminations. *See* 26 U.S.C. §§ 6330(d), 6213(a); *Byers*, 740 F.3d at 673–74 ("There is no question here regarding the Tax Court's exclusive jurisdiction over petitions for income tax redeterminations . . . ."). The proper court, therefore, for Mr. Greene's claim for a "redetermination of [his] entire 1990 tax liability" is the United States Tax Court, not the district court.[4]

---

[4] The Court does not opine on whether Mr. Greene may properly bring this claim in the Tax Court at this time.

- 13 -

**B.     Rule 12(b)(6)**

Because the Court grants the United States' motion to dismiss Mr. Greene's redetermination claim pursuant to Rule 12(b)(1), it need not address the United States' alternative argument that Rule 12(b)(6) requires dismissal of this claim.

**IV.    CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that the United States' Motion for Reconsideration (Doc. 22) is **DENIED**.

**IT IS FURTHER ORDERED** that the United States' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 30) is **GRANTED** in part and **DENIED** in part. The Court grants the motion with respect to Mr. Greene's claim for redetermination of his 1990 tax liability. The Court denies the remainder of the motion. Therefore, Mr. Greene's claim for a refund survives.

**IT IS FURTHER ORDERED** that Plaintiff's claim for a redetermination of his 1990 tax liability is dismissed without prejudice.

Dated this 31st day of March, 2015.

_____
James A. Teilborg
Senior United States District Judge